WILLIAM OLIVER *vs.* SYLVESTER BROWN and another.

Lincoln.   Opinion October 12, 1888.

*Trespass.   Law and fact.   Practice.*

In an action of trespass for removing boards from a barn, it is error to instruct
the jury to return a verdict for the defendants, on the ground that the
defendants were the servants of the real owner of the barn, when the plaint-
iff claims to be the owner and there is evidence tending to show, that the barn
set across the dividing line, on the plaintiff's land.

ON exceptions.

The opinion states the case.

*William H. Hilton,* for the plaintiff, cited: *Hunnewell* v.
*Hobart,* 42 Maine, 565; *Bradley* v. *Davis,* 14 Maine, 44;
*Norton* v. *Craig,* 68 Maine, 277.

*W. Gilbert and O. D. Castner,* for the defendants.

VIRGIN, J.   Trespass for stripping boards from a certain barn
to which the plaintiff claims title.   Plea, general issue, with a
brief statement that the barn is the property of one Mary A.
Demuth, as whose servants the defendants acted in the premises.
The defendants admitted they took off the boards.

The case comes up on exceptions to the order of the presiding
justice, who directed a verdict for the defendants.

The reported evidence shows, that by the partition of the
Philip Demuth homestead in October, 1859, the barn in contro-
versy, though situated (as claimed by the plaintiff) on that
portion of the homestead set out to Daniel and William Demuth,
was set out to Sarah " with the right of removing the same with
care."   She never removed it, but in December, 1859, she
quitclaimed all her right, title and interest in her father's farm
described by metes and bounds, " with the buildings thereon,"
to Charles, which conveyance must have included the barn
wherever situated upon the farm.

In 1873, Charles conveyed his interest in the entire farm to
Daniel and William, which also must have included the barn;
and if that were personal property before, its sale to the owner

of the soil on which it had always stood, rendered it a part of the realty from which it had never been severed. *Curtis* v. *Riddle*, 7 Allen, 185.

Six years later (in 1879) Daniel and William quitclaimed back to Charles all of the farm which lay north of the parcel on which (as the plaintiff claims) the barn has always stood; and if the plaintiff's claims as to its location is correct, then the barn was not included in this conveyance, but remained the property of Daniel and William, to whom Charles conveyed it in 1873.

Subsequently (in 1885) Daniel, by his deed of warranty, conveyed by metes and bounds one and one-half acres of land on which (as the plaintiff claims) the barn has always stood, to the plaintiff, Daniel having, as he testified, previously obtained William's interest in that parcel.

The north line of the one and one-half acre parcel is claimed by the plaintiff to be a continuation of the line of three stone posts which marked the south line of the strip of land set out to Sarah by the partition. If that is the true line, it should be straight, as the line designated by the report of the commissioners consists of one course, "north 85° 45' west." That line extended would leave the barn a few feet south of it and upon the one and one-half acre parcel conveyed by Daniel to the plaintiff in 1885. The testimony of the plaintiff as well as that of Governor Marble is positive that the western post was moved southerly in the early summer of 1887, and that the three no longer, as prior to the time named, stand in a straight line. Following the crooked line as now indicated by the posts and it would strike the northeast corner of the barn and thence pass diagonally through it as it does not sit parallel with the line.

If the stone posts when straight mark the true line, then the mortgage to Kennedy under which Mary A. Demuth claims becomes immaterial, inasmuch as it would not include the barn.

The presiding justice took this question of boundary from the jury, which we think was erroneous.

*Exceptions sustained.*

PETERS, C. J., WALTON, DANFORTH, LIBBEY and FOSTER, JJ., concurred.